IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 19, 2022

**KAREN THOMAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 118434   Steven Wayne Sword, Judge**

_____

**No. E2021-01338-CCA-R3-PC**
_____

The Petitioner, Karen Thomas, appeals the denial of her petition for post-conviction relief from her conviction of aggravated stalking, alleging that she received ineffective assistance of counsel because trial counsel did not object to the State presenting rebuttal testimony at trial or the trial court's jury instruction regarding the rebuttal testimony. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined, and JOHN EVERETT WILLIAMS, P.J., (not participating).[1]

J. Liddell Kirk, Madisonville, Tennessee, for the Petitioner, Karen Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Ronald D. Coleman, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** The Petitioner was convicted of aggravated stalking of Alyssa Dojah. State v. Karen Sarah Thomas, Alias, No. E2018-00353-CCA-R3-CD, 2019 WL 3822178, at *1 (Tenn. Crim. App. Aug. 15, 2019), perm. app. denied (Tenn. Jan. 15, 2020). Relevant to this appeal, during trial, the State asked the trial court to "address a matter 'that happened during lunch.'" Id. at *15. During a jury-out hearing, Knoxville County Sheriff's Office Detective Tammy Brummit, who had investigated the aggravated stalking case, testified that she escorted the victim to an outside patio area after they obtained food from the cafeteria during the lunch recess. Id. As Detective Brummit returned inside, the Petitioner

---

[1] The Honorable John Everett Williams passed away on September 2, 2022, and did not participate in this opinion. We acknowledge his faithful service to this Court.

and her son walked past Detective Brummit toward the patio area. Id. Detective Brummit observed the Petitioner notice the victim and her father standing in the patio area, say something to the "young man" she was with, and walk straight toward the victim. Id. Detective Brummit testified that the Petitioner passed within two feet of the victim before beginning a conversation with Lee Ann Wright, who was one of the Petitioner's trial witnesses. Id. The prosecutor requested that the trial court allow the State to present evidence of the "incident" to the jury to demonstrate that the Petitioner was "still exhibiting" stalking behaviors towards the victim. Id. The prosecutor stated that as the victim was walking back toward the courtroom door after the lunch recess, the Petitioner "stopped, walked around the door, just simply stood at the door, crossed her arms, and was staring at [the victim]." Id. The prosecutor said that the Petitioner remained standing at the door when the victim and the prosecutor returned from the prosecutor's office "'a minute or so' later[.]" Id.

The trial court answered affirmatively when trial counsel asked, "'May I inquire?'" when the prosecutor finished speaking, but he was only able to say to Detective Brummit, "'Officer, do you see in…" before the trial court interrupted trial counsel and stated that "it did not 'see the need to get into that' 'since this [was] behavior that occurred after the indictment date[.]'" Id. The trial court concluded that the incident was not "relevant 'to whether or not [the victim] was afraid that day' but could be used as rebuttal evidence of 'whether or not [the Petitioner] was intentionally intimidating' the victim." Id. The trial court went on to state that they should "finish the defense proof," and then the State could "try to put something in rebuttal that goes to intent." Id. Trial counsel responded that "this might be relevant[,]" and the trial court permitted him to elicit from Detective Brummit that the "young man" she saw the Petitioner talking to was the Petitioner's son. Id. Trial counsel stated, "I would assert that it's probably reasonable for a mother to talk to her son. I know nothing about the particulars, but that's not what I would call threatening. I appreciate your Honor's ruling, and we'll go forward." Id. The jury then returned to the courtroom, and the trial resumed.

There was no further discussion of the incident until the State recalled the victim to rebut the testimony of Tracy Walker, who testified that she had never seen the Petitioner "'trying to insert herself into the proximity of' the victim and that she had not seen the [Petitioner] act aggressively towards the victim." Id. at *8. The victim stated that Detective Brummit walked her and her father to the outside patio to eat lunch, and after Detective Brummit walked away from the area, the Petitioner "came and stood near them, which was 'too close for [the victim's] comfort[,]'" and "looked at" the victim before beginning a conversation with Wright. Id. After the State's examination of the victim on rebuttal, the trial court held a bench conference. Id. at *16. The trial court stated that it needed to instruct the jury that it could not use the victim's testimony regarding the incident, "if they believe it happened, for anything other than intent and motive" because it was "another bad

- 2 -

act outside of the scope of the indictment[,]" noting that it felt "a little uncomfortable with it now that [the trial court] let it in." Id. The trial court asked trial counsel if he wanted to cross-examine the victim, to which he answered affirmatively. Id. Before trial counsel began his cross-examination, the trial court instructed the jury:

> You've just heard some testimony about something that allegedly happened outside of the scope of this indictment. So you can't consider any other acts that are outside the scope of this indictment to determine that, well, because the [Petitioner] acted this way, they must have acted that way in the past. That really is only introduced to you to determine intent or motive. So you can use it if you think something else happened to—to help you determine if there was some intent or motive to violate the law of which she is, in fact, charged with here. Okay? So you can't use it for any other purpose.

Id. On cross-examination, the victim stated that the Petitioner and Wright stood close enough to her that she could hear their voices but not what they were saying. Id. at *9. She conceded that the Petitioner "was not 'trying to project her voice' so that the victim could hear it." Id. At trial counsel's request, the victim drew a diagram of the patio area and the incident. Id.

On surrebuttal, the Petitioner testified that during the lunch recess, she gave her son her debit card to buy lunch, saw Wright sitting in the outdoor patio smoking area, and went to join her. Id. The Petitioner claimed that she did not see the victim and her father until Wright pointed them out, at which time the victim and her father were already walking towards the other side of the patio area. Id. The Petitioner did not "consider it to be an issue" since the victim and her father were walking in the opposite direction. Id. The Petitioner also drew a diagram of the incident and the parties' respective positions. Id.

Trial counsel also recalled Wright on surrebuttal. Id. Wright drew a diagram of the incident and testified that the Petitioner walked straight to where Wright was in the patio area and did not make any "hostile moves" towards or talk to the victim or her father. Id. Wright maintained that the Petitioner did not notice that the victim and her father were present and that the victim walked across the area to stand on the same side of the "breezeway" as the Petitioner and Wright. Id. Following Wright's testimony, the trial court repeated to the jury that the testimony about the lunch recess incident "really only [went] to intent and motive" and that it was not "substantive evidence of what actually happened[.]" Id. at *16. Prior to closing arguments, the trial court warned the State that:

> this last part that we brought in, it's after the fact of the indictment. So I really caution you. I wouldn't dwell on that too much. I don't think it's

unfairly prejudicial to the [Petitioner]. It's just if you—if you dwell on that, you increase the danger if it was in error. So I would—I don't think that was worth a whole lot, but I don't think it hurt her either.

Id. The State did not mention the lunch recess incident during its closing argument, but during trial counsel's closing argument, trial counsel stated that:

Although this is a very small thing, at the end of the day the [S]tate brought up the accusations about standing out in the area, and you'll remember, I asked each witness for the [St]ate and for us, to draw a little map. The last three exhibits are the maps drawn by three people to show, from their perspective, what happened. Look at them.

The building structure is part of your common experience. I don't want you to go try and be investigators and look things up, but you can use your commonsense. People walk out onto a walkway and they have a smoke. If you smoke, that's an urge that's damn near irresistible. You have people from different walks of life, all of whom say this woman did nothing aggressive against that young lady.

Id. The jury ultimately found the Petitioner guilty of two different theories of aggravated stalking, which the trial court merged. Id. at *9. Thereafter, the Petitioner appealed her convictions to this court,[2] arguing that the evidence was insufficient to support her convictions and that the trial court erred in admitting the testimony regarding the lunch recess hearing in violation of Tennessee Rule of Evidence 404(b). Id. at *10, *15. This court concluded that the evidence presented during the State's case-in-chief was sufficient to support the Petitioner's convictions and deemed the Rule 404(b) argument waived because trial counsel failed to raise a contemporaneous objection to the lunch recess testimony, did not raise a formal objection to the testimony until the motion for new trial, and never specifically objected to the procedural requirements of Rule 404(b). Id. at *17. Although the Petitioner did not request plain error relief on direct appeal, this court also briefly addressed the rebuttal testimony under plain error analysis. Id. at *18. This court noted that the trial court twice instructed the jury on how to consider the testimony, that the victim's testimony about the incident was brief, that the trial court found the testimony to be "relatively innocuous and . . . not 'unfairly prejudicial[,]'" and that the State did not mention the testimony in its closing argument, though the Defendant did. Id.

_____

[2] We take judicial notice of the Petitioner's archived direct appeal record, pursuant to an order filed by this court on April 1, 2022. See Order, Karen Thomas v. State, No. E2021-01338-CCA-R3-PC (Tenn. Crim. App. Apr. 1, 2022).

- 4 -

**Post-Conviction Proceedings.** The Petitioner filed a timely pro se petition for post-conviction relief on January 15, 2021, contending that she received ineffective assistance of counsel at trial. The post-conviction court appointed counsel on January 25, 2021, and the Petitioner filed an amended petition for post-conviction relief on August 26, 2021, asserting that she received ineffective assistance of counsel at trial due to trial counsel's failure to object to the lunch recess testimony or the trial court's instruction regarding the jury's use of the testimony.

The post-conviction court held a hearing on the amended petition on September 16, 2021. The post-conviction court agreed to take judicial notice of the trial transcripts and technical record, and apart from the trial record, no testimony or other evidence was presented at the hearing. The Petitioner asserted that trial counsel "should have objected to any admissibility of any witness regarding that incident that occurred on the day of trial." The Petitioner further asserted that the trial court should have levied "some type of sanction against [the Petitioner] for misconduct" if it believed she had "done anything wrong that day[,]" instead of "bring[ing] all that up in front of the jury and ask[ing] them to deliberate on the conduct that she was charged with in 2016." The Petitioner also contended that trial counsel should have objected to the trial court's jury instruction that the jury could consider the conduct for intent or motive because it "would not be proper to consider [the lunch recess incident] for intent or motive of criminal conduct that was alleged to have occurred in 2016, a year earlier[.]"

The State argued that trial counsel did not "agree" that the testimony regarding the lunch recess incident could be admitted but rather that the trial court allowed it solely as rebuttal proof of intent after conducting a jury-out hearing. With respect to the jury instruction, the State asserted that trial counsel was not deficient for failing to object to the instruction because "there was no valid objection to it." The State elaborated that "[o]nce the evidence came in, the [trial court] gave the proper instruction on how it could be considered by the jury in a very limited fashion." With respect to trial counsel's alleged deficiency, the State argued that "people may disagree with the way [trial counsel] approached it, but that doesn't approach the level of deficiency for ineffective assistance purposes." The State also asserted that even if trial counsel were deficient, such deficiencies did not affect the outcome of trial, noting this court's conclusion on direct appeal that the case-in-chief evidence was sufficient to support the Petitioner's convictions.

In response to the State's arguments, the Petitioner averred that the trial court should not have allowed testimony regarding the lunch recess incident and that once it did allow the testimony, the trial court should have instructed the jury to completely disregard the

- 5 -

testimony. The Petitioner also noted that on direct appeal, this court specifically concluded that trial counsel failed to preserve the issue of the rebuttal testimony for appellate review.

The post-conviction court denied the petition for post-conviction relief by written order on October 12, 2021. In denying the petition, the post-conviction court found that:

> the State's rebuttal proof was admissible to rebut the testimony of [] Walker. The defense proof was that the [P]etitioner took steps to avoid the victim after the [order of protection] was in effect. The incident in the hallway was proof that the [P]etitioner was willing to continue to contact and be in the proximity of the victim regardless of any court order. Thus, it was proper rebuttal.

> It is arguable that the rebuttal testimony was subject to a 404(b) hearing. The proof indicated that the [P]etitioner did not say anything harassing toward the victim during the trial. The court conducted a jury-out hearing and made a determination that a material issue existed other than conduct conforming to a character trait. The court instructed the jury accordingly. Thus, the court substantially complied with Rule 404(b).

> Under the facts of the case, the court finds that trial counsel was not deficient in his performance in failing to object to the rebuttal proof. Had he objected, the evidence would have been deemed admissible as proper rebuttal proof and admissible under Rule 404(b). Assuming trial counsel was deficient, the court finds that the [P]etitioner has not proven that she suffered prejudice. The rebuttal proof involved a minor incident in light of the strong proof of direct harassment which occurred during the offense dates. The rebuttal proof had no impact on the verdict and likely supported the defense argument that the victim was exaggerating what had been occurring.

The Petitioner filed a notice of appeal on November 12, 2021.

## ANALYSIS

The Petitioner's sole argument on appeal is that trial counsel provided ineffective assistance of counsel by failing to object to the rebuttal testimony regarding the lunch recess incident and by failing to object to the jury instruction that the jury could consider the testimony for motive or intent. The State responds that the Petitioner has failed to meet her burden of proving that trial counsel was deficient or that she suffered prejudiced. We agree with the State.

- 6 -

Initially, we must address the untimeliness of the Petitioner's notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

The Petitioner filed a notice of appeal on November 12, 2021, thirty-one days after the post-conviction court denied the amended post-conviction petition by written order. The Petitioner has failed to provide an explanation for her untimely filing. However, given that the notice of appeal was untimely by only one day, we conclude that the "interest of justice" is best served by granting a waiver in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley,

- 7 -

397 S.W.3d at 80 (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id. (citing Grindstaff, 297 S.W.3d at 216; Finch v. State, 226 S.W.3d 307, 315 (Tenn. 2007); Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) this deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Id.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369). Nevertheless, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House, 44 S.W.3d at 515 (quoting Goad, 938 S.W.2d at 369).

The Petitioner asserts that the victim's testimony regarding the lunch recess incident was not proper rebuttal testimony and therefore "should have been immediately objectionable." The Petitioner elaborates that the testimony could not be considered for evidence of intent or motive because the conduct for which the Petitioner was charged occurred a year before trial, and the lunch recess incident "was not even a prior act, bad or otherwise, as it was neither prior to the charged conduct . . . nor prior to trial." Further, the Petitioner asserts that the trial record demonstrates that "there was no tactical reason" not to object to the rebuttal testimony or the jury instruction on the rebuttal testimony and that "but for the additional irrelevant 'rebuttal' testimony . . . and the erroneous trial court instruction[,]" there was a "reasonable likelihood of a more favorable outcome for the [Petitioner] at trial."

As we have previously observed, neither trial counsel nor the Petitioner testified at the post-conviction hearing. The absence of trial counsel's testimony at the hearing does not alter the petitioner's burden to prove the factual and legal contentions in his petition. Moriarco Lee v. State, No. W2019-01592-CCA-R3-PC, 2020 WL 6391188, at *6 (Tenn. Crim. App. Oct. 30, 2020) (citing Jamarius Gant v. State, No. W2019-00147-CCA-R3-PC, 2020 WL 918603, at *5 (Tenn. Crim. App. Feb 25, 2020) (concluding that "even without trial counsel's testimony, the petitioner failed to establish deficient performance or prejudice")). Although the Petitioner asserts that trial counsel's failure to object to the victim's rebuttal testimony regarding the lunch recess incident or the jury instruction given by the trial court constituted deficient performance, the Petitioner presented no evidence, through her own testimony or otherwise, that such failure to object constituted ineffective assistance. In its order denying relief, the post-conviction court found that trial counsel was not ineffective for failing to object because the testimony would have been admitted as rebuttal proof and admissible under Rule 404(b), even if trial counsel had objected. The post-conviction court further found that even if trial counsel were deficient in failing to object to the rebuttal testimony, the Petitioner was unable to show any prejudice because "the proof in the trial was overwhelming against the [P]etitioner[,]" the rebuttal testimony "involved a minor incident in light of the strong proof of direct harassment which occurred during the offense dates[,]" and the rebuttal testimony "likely supported the defense argument that the victim was exaggerating what had been occurring." With respect to the Petitioner's assertion that trial counsel should have objected to the jury instruction regarding the rebuttal proof, the post-conviction court found only that the trial court "instructed the jury accordingly" after determining in the jury-out hearing that "a material issue existed other than conduct conforming to a character trait."

In this appeal, the Petitioner appears to abandon her argument, which she raised on direct appeal, that trial counsel should have objected to the rebuttal testimony and jury instruction based on Tennessee Rule of Evidence 404(b). See Karen Sarah Thomas, Alias, 2019 WL 3822178, at *17-18. She does not assert alternative grounds on which trial

counsel should have objected, only contending that the lunch recess incident could not have been used to show intent or motive because it was not a "prior act, bad or otherwise[.]"  In light of the Petitioner's apparent abandonment of the above claim, we find it unnecessary to engage in a full Rule 404(b) analysis of the issue.  However, we note that our supreme court has explained that "the plain language of Tennessee Rule of Evidence 404(b) . . . uses the phrase 'other crimes, wrongs, or acts' rather than 'prior crimes, wrongs, or acts.'  Thus, Rule 404(b) would permit the introduction of evidence of subsequent acts to establish one's intent during a prior act in appropriate cases."  State v. Elkins, 102 S.W.3d 578, 584 (Tenn. 2003).  The trial court twice gave a limiting instruction that the jury could only use the rebuttal testimony for intent or motive, not as substantive evidence.  The post-conviction court, which was also the trial court, found that even if trial counsel had objected, the evidence would have been admitted as "proper rebuttal evidence and admissible under Rule 404(b)."[3]  There is nothing to suggest that the trial court would have given a different jury instruction even if trial counsel had objected.  The Petitioner's claim of a "reasonable likelihood of a more favorable outcome" at trial if trial counsel had objected to the rebuttal testimony or jury instruction is purely speculative.  Because the Petitioner has failed to show that trial counsel's failure to object to the rebuttal testimony or limiting instruction was deficient or how such alleged deficiencies resulted in prejudice, she is not entitled to relief.

## CONCLUSION

Because the Petitioner has failed to establish that she received ineffective assistance of counsel, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

---

[3]Although the post-conviction court found that the trial court had substantially complied with the procedural requirements of Rule 404(b), this court noted on direct appeal that there was "never a formal ruling" by the trial court because trial counsel never identified grounds for objection.  Karen Sarah Thomas, Alias, 2019 WL 3822178, at *17.  This court has stated that a petitioner should conduct a Rule 404(b) hearing at the post-conviction evidentiary hearing in order to prove deficient performance by trial counsel in failing to object to evidence allegeded to be inadmissible under Rule 404(b).  Jonathan Mitchell Grimes v. State, No. W2018-01665-CCA-R3-CD, 2020 WL 249228, at *11 (Tenn. Crim. App. Jan. 16, 2020) (citing Shakir Adams v. State, No. W2010-00217-CCA-R3-PC, 2011 WL 744736, at *12 (Tenn. Crim. App. Mar. 1, 2011), perm. app. denied (Tenn. Jul. 14, 2011)).